No. 17-2130

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

_____

WAYMO LLC,

*Plaintiff-Appellee*,

*v.*

UBER TECHNOLOGIES, INC.,
OTTO TRUCKING LLC, and OTTOMOTTO LLC,

*Defendants-Appellants.*

_____

Appeal from the United States District Court for the
Northern District of California in Case No. 3:17-CV-00939,
Judge William H. Alsup

_____

## PLAINTIFF-APPELLEE WAYMO LLC'S OPPOSITION TO MOTION TO STAY DISTRICT COURT PROCEEDINGS PENDING APPEAL

Charles K. Verhoeven
David A. Perlson
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111-4788
(415) 875-6600

June 19, 2017

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

BACKGROUND .....................................................................................2

    A.    Waymo's Investment In Self-Driving Technology..............................2

    B.    Levandowski's Theft Of Trade Secrets And Move To Uber...............3

    C.    Waymo's Arbitration With Levandowski ............................................4

    D.    Waymo's Complaint And Motion For A Preliminary Injunction
        Against Uber.......................................................................................4

    E.    Uber's Motion To Compel Arbitration ...............................................6

    F.    Uber's Motion For A Stay Pending Appeal ........................................6

ARGUMENT ..........................................................................................7

    A.    Uber Fails To Show A Likelihood Of Success ...................................8

    B.    Uber Fails To Show Irreparable Harm...............................................16

    C.    A Stay Would Substantially Injure Waymo.......................................19

    D.    The Public Interest Does Not Support A Stay ...................................21

CONCLUSION.......................................................................................22

CERTIFICATE OF COMPLIANCE......................................................23

CERTIFICATE OF INTEREST ............................................................24

CERTIFICATE OF SERVICE ..............................................................26

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alascom v. ITT N. Elec. Co.*,
　727 F.2d 1419 (9th Cir. 1989) ............................................................18

*Amergence Supply Chain Mgmt. Inc. v. Changhong (Hong Kong) Trading Ltd.*,
　2016 WL 8234652 (C.D. Cal. Apr. 21, 2016) ...................................16

*Antonelli v. Finish Line, Inc.*,
　2012 WL 2499930 (N.D. Cal. June 27, 2012)....................................18

*Beard v. United States*,
　451 F. App'x 920 (Fed. Cir. 2011) ......................................................7

*Blackbird Techs., Inc. v. Joshi*,
　2015 WL 5818067 (N.D. Cal. Oct. 6, 2015)......................................12

*Britton v. Co-op Banking Grp.*,
　916 F.2d 1405 (9th Cir. 1990) ..............................................................7

*Comedy Club, Inc. v. Improv W. Assocs.*,
　553 F.3d 1277 (9th Cir. 2009) ............................................................21

*Comer v. Micor, Inc.*,
　436 F.3d 1098 (9th Cir. 2006) ............................................................22

*E.D.C. Techs., Inc. v. Seidel*,
　216 F. Supp. 3d 1012 (N.D. Cal. 2016) ............................................13

*Facility Constr. Mgmt. Inc. v. Ahrens Concrete Floors, Inc.*,
　2010 WL 1265184 (N.D. Ga. Mar. 24, 2010) ...................................13

*FTC v. Standard Oil Co. of Cal.*,
　449 U.S. 232 (1980)............................................................................17

*Garcia v. Google, Inc.*,
　786 F.3d 733 (9th Cir. 2015)..............................................................19

*Goldman v. KMPG LLP*,
　173 Cal. App. 4th 209 (2009) .......................................... 9, 10, 14, 15

*Kramer v. Toyota Motor Corp.*,
　705 F.3d 1122 (9th Cir. 2013) .......................................... 8, 9, 11, 14

*Leiva-Perez v. Holder*,
  640 F.3d 962 (9th Cir. 2011).................................................... 7, 16, 17

*Midway Fin. Corp. v. Walters*,
  1992 WL 354608 (9th Cir. 1992) ........................................8

*Mohamed v. Uber Techs., Inc.*,
  848 F.3d 1201 (9th Cir. 2016) ...........................................12

*Morse v. Servicemaster Glob. Holdings, Inc.*,
  2013 WL 123610 (N.D. Cal. Jan. 8, 2013) ...........................17

*Murphy v. DirecTV, Inc.*,
  724 F.3d 1218 (9th Cir. 2013) .......................... 9, 14, 15, 16

*N. Am. Chem. Co. v. Superior Court*,
  59 Cal. App. 4th 764 (1997) ..............................................13

*Nguyen v. Tran*,
  157 Cal. App. 4th 1032 (2007) ............................................8

*Pac. Select Fund v. Bank of N.Y. Mellon*,
  2010 WL 11468787 (C.D. Cal. Sept. 20, 2010) ..................13

*Rajagopalan v. NoteWorld, LLC*,
  718 F.3d 844 (9th Cir. 2013)..............................................12

*Regents of Univ. of California v. Am. Broad. Companies, Inc.*,
  747 F.2d 511 (9th Cir. 1984)................................................8

*Uptown Drug Co. v. CVS Caremark Corp.*,
  962 F. Supp. 2d 1172 (N.D. Cal. 2013) ..............................13

*Zaborowski v. MHN Gov't Servs., Inc.*,
  2013 WL 1832638 (N.D. Cal. May 1, 2013)........................18

## Rules and Regulations

Fed. R. App. P. 32(a)(5)...........................................................23

Fed. R. App. P. 32(a)(6)...........................................................23

Fed. R. App. P. 32(f)................................................................23

# INTRODUCTION

Uber seeks a stay pending appeal notwithstanding that expedited merits briefing in this appeal will be complete in a month and Uber has displayed no urgency before now. As the district court found, Uber has no substantial probability of success on appeal and the real goal of Uber's stay motion is to delay the scheduled trial in October, enabling continuing harm to Waymo in the meantime. Uber ignores the standard of review of the denial of a stay pending appeal—abuse of discretion—and largely ignores the district court's reasoning for denying a stay here. There was no abuse of discretion, and Uber's motion for a stay pending appeal should be denied.

*First*, Uber fails to show a likelihood of success on the merits. Uber did not sign the agreements with the arbitration clauses it invokes, and it does not fall within the narrow exception of equitable estoppel. The Ninth Circuit has repeatedly held that equitable estoppel does not apply where the plaintiff can prove its case independent of the agreement that contains the arbitration provision. Here, there is no doubt that Waymo can do so because Waymo relies on the common law duty of loyalty Levandowski owed to Waymo—and Waymo, in fact, disavowed any reliance on Levandowski's contractual duties. There is no plausible basis to allow Uber to invoke the arbitration clauses of agreements it did not sign where Waymo will prove its case without any reference to those agreements.

1

*Second*, the equitable factors strongly favor Waymo, as the district court found. There is no irreparable injury to Uber because the appeal can be decided before the October trial date. The supposed harm Uber identifies in having to conduct pre-trial proceedings is both illusory, given that those proceedings would be useful even if the case were to go to arbitration, and insufficient to constitute irreparable harm as a matter of law. Indeed, as the district court found, Uber "sat on [its] hands" in appealing the arbitration decision and "[n]ow Uber wants to wiggle out from that October 2nd agreement" for trial. June 7, 2017 Hrg. Tr. ("6/7 Tr.") 29, 37 (attached as Ex. A). Moreover, Waymo would suffer substantial injury from a stay, which would require the trial date to be pushed back and thereby delay Waymo's ability to stop Uber's continuing violation of its rights.

## **BACKGROUND**

### A.     **Waymo's Investment In Self-Driving Technology**

Google launched its self-driving car project in 2009 and has been the industry leader in self-driving hardware and software ever since. Dkt. 25-3 at 2-3. In 2016, Google's self-driving car project became Waymo.[1] *Id.* at 3. Waymo has dedicated significant resources in the development of self-driving car technology, and has developed its own, custom-built LiDAR laser system to provide the "vision" for its autonomous vehicles. *Id.* Waymo's proprietary LiDAR systems

---

[1]   Further references to "Waymo" refer to the self-driving car project from its inception in 2009 to the present.

are uniquely high-performing and low-cost, less than one-tenth the cost of commercially available LiDAR systems.  *Id.* at 4.

Uber, by contrast, was a late entrant in the field of self-driving technology, starting in 2015.  *Id.* at 6-7.  Although Uber is developing its own LiDAR system in-house, Uber is still using off-the-shelf LiDAR technology provided by third parties in all of the self-driving vehicles it has on the road today.  Dkt. 173-4 at 5.

### B.     Levandowski's Theft Of Trade Secrets And Move To Uber

In late 2015 and early 2016, Anthony Levandowski, a former manager of Waymo's self-driving car project, took extraordinary efforts to raid Waymo's design server, download more than 14,000 highly confidential and proprietary design files, and then conceal his efforts, all shortly before his resignation.  Dkt. 23 ¶ 4; Dkt. 24-2 ¶¶ 17-19, 22.  Waymo has provided unrebutted, sworn testimony, forensically proving that Levandowski downloaded these 14,000 files and transferred them to an external media device.  Dkt. 24-2 ¶¶ 17-19, 22.  The 14,000 files that Levandowski downloaded include highly confidential design schematics for Waymo's LiDAR circuit boards.  Dkt. 23 ¶ 4.

Levandowski founded a company called 280 Systems on January 15, 2016, twelve days before he resigned from Waymo.  Dkt. 23 ¶ 49.  280 Systems became Ottomotto LLC, *id.*, and Uber acquired Ottomotto six months later for $680

3

million.  *Id.* ¶ 55.  As part of the acquisition, Levandowski became the head of the self-driving car project at Uber.  *Id.* ¶ 56.

### C.    Waymo's Arbitration With Levandowski

Google instituted arbitration proceedings against Levandowski on October 28, 2016.  Dkts. 114-7, 114-8.  The arbitrations concern Levandowski's improper solicitation of employees to leave Google and join Ottomotto.  Dkt. 114-7 at 18-28.  Google is not asserting any trade secret misappropriation claims in the arbitrations.  Dkt. 425 at 2; *see also* Dkt. 125 at 6.

### D.    Waymo's Complaint And Motion For A Preliminary Injunction Against Uber

Waymo brought suit against Uber (along with Ottomotto LLC and Otto Trucking LLC) on February 23, 2017, asserting claims for trade secret misappropriation, unfair competition, and patent infringement.  Dkt. 23 ¶ 1.  The trade secret misappropriation claims are based on allegations that Uber had acquired Waymo's trade secret information, that Uber had knowledge of or reason to know that the trade secrets were acquired by improper means or in an unlawful manner, and that Uber was using the trade secrets without Waymo's consent and to Uber's benefit.  *Id.* ¶¶ 73-76, 82-85.  Waymo did not bring any claims against Levandowski.  And Waymo did not bring any contractual claims against anyone.  The *only* reference to contracts are two paragraphs of the Amended Complaint, which mention that Waymo "requires all employees, contractors, consultants,

vendors, and manufacturers to sign confidentiality agreements," *id.* ¶ 72, and that Waymo uses reasonable efforts to maintain the secrecy of its confidential information, including with "confidentiality agreements and non-disclosure agreements," *id.* ¶ 82.

Waymo also moved for a preliminary injunction, Dkt. 24, and on May 11, 2017, the district court granted in part and denied in part Waymo's motion. Dkt. 433. The court found that Waymo "has shown compelling evidence that its former star engineer, Anthony Levandowski, downloaded over 14,000 confidential files from Waymo immediately before leaving his employment there" and that "Uber likely knew or at least should have known that Levandowski had taken and retained possession of Waymo's confidential files." *Id.* at 1-2. The court further found that "those files … likely remain in Levandowski's possession," and "it would strain credulity to imagine that Levandowski plundered Waymo's vault the way he did with no intent to make use of the downloaded trove." *Id.* at 7-10.

Nonetheless, given that the record was as-yet incomplete as to the extent of Uber's use of the trade secrets, the district court crafted "narrow and carefully-tailored relief." *Id.* at 21-22 (citations omitted). The district court set forth a series of reporting, record-keeping, and other requirements for Uber and granted Waymo certain expedited discovery. *Id.* at 22-25.

### E.     Uber's Motion To Compel Arbitration

On March 29, Uber moved to compel arbitration based on the arbitration provisions in the agreements between Waymo and Levandowski ("Levandowski Agreements"). Dkt. 125. Because Uber was not a signatory to the Levandowski Agreements, its motion was based on the theory of equitable estoppel. *Id.*[2]

On May 11, the district court denied Uber's motion to compel arbitration, holding that "defendants have not shown the elements necessary to justify application of equitable estoppel." Dkt. 425 ("Order") at 1. The district court noted the two-prong test identified by the Ninth Circuit, analyzed each prong, and concluded that "defendants have not shown that either *Goldman* prong is met, or that Waymo's actions implicate the policy rationale for applying equitable estoppel." *Id.* at 4.

### F.     Uber's Motion For A Stay Pending Appeal

Uber filed in the district court a motion for a stay pending appeal, which the district court denied. 6/7 Tr. 36:13-42:7. First, the district court found that Uber had not made a strong showing of a likelihood of success. *Id.* 41:8-12. Second, the district court found no irreparable harm to Uber absent a stay because Uber's

---

[2]   Contrary to Uber's suggestion (Mot. 2, 6) that the arbitration provisions applied to disputes with "anyone," in fact they apply to disputes between Levandowski and anyone *at Google/Waymo*. Dkt. 138 at 51. Regardless of the supposed breadth of the arbitration provisions, Uber does not dispute that it (as a non-signatory) has standing to enforce the provisions only if it meets the requirements for equitable estoppel.

appeal could be resolved before trial and any discovery taken during this litigation could be used during arbitration if Uber prevailed on appeal. *Id.* 39:16-41:7; 41:13-19. Third, the district court found that the equities favor giving Waymo a trial as early as possible, and that a stay would substantially injure Waymo by delaying the trial. *Id.* 37:23-38:15; 41:20-23. Fourth, the district court found the public interest factor neutral, but noted that a stay would likely have a detrimental effect on the district court's calendar. *Id.* 37:11-15; 41:24-42:4.

## ARGUMENT

Under Ninth Circuit precedent, an order denying a motion to compel arbitration does not create an automatic stay pending appeal. *Britton v. Co-op Banking Grp.,* 916 F.2d 1405, 1412 (9th Cir. 1990). Instead, the usual standard for a stay pending appeal applies: "The party requesting a stay [pending appeal] bears the burden of showing that the circumstances justify an exercise of the court's discretion based on consideration of four factors, the first two of which are the most critical: (1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Beard v. United States*, 451 F. App'x 920, 921 (Fed. Cir. 2011); *see also Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) (same).

The Ninth Circuit "review[s] the district court's denial of a stay pending appeal for abuse of discretion." *Midway Fin. Corp. v. Walters*, 1992 WL 354608, at *2 (9th Cir. 1992); *see also Regents of Univ. of California v. Am. Broad. Companies, Inc.*, 747 F.2d 511, 522 n.7 (9th Cir. 1984). Uber fails to show that the district court erred, let alone abused its discretion, in finding no likelihood of success, no irreparable harm to Uber, and substantial harm to Waymo, and thus concluding that a stay was unwarranted.

### A.   Uber Fails To Show A Likelihood Of Success

The district court correctly held, under well-established law, that Uber's motion to compel arbitration should be denied and that Uber had not shown a likelihood of success in challenging this ruling on appeal. "Generally, the contractual right to compel arbitration may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013) (internal quotation marks omitted). Uber is not a signatory to either of the Levandowski Agreements. Thus, Uber may seek arbitration only if "the relevant state contract law allows the litigant to enforce the agreement." *Id.* at 1128. Under California law, there are "limited exceptions" to the rule that "only parties to an arbitration contract may enforce it or be required to arbitrate." *Nguyen v. Tran*, 157 Cal. App. 4th 1032, 1036 (2007). Uber "bears the burden of proving that" one

of these exceptions applies.  *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1233-34 (9th Cir. 2013).

Uber relies solely on a theory of equitable estoppel (Mot. 9-18), but the prerequisites for equitable estoppel are absent here.   Under California law, equitable estoppel is "narrowly confined" to "two very specific conditions":

> (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.

*Murphy*, 724 F.3d at 1229 (citations omitted).  The district court correctly held that "defendants have not shown that either … prong is met, or that Waymo's actions implicate the policy rationale for applying equitable estoppel."  Order at 4.

**1.**  As to the first prong, Uber cannot show that Waymo must rely on, or that its claims are intimately founded in and intertwined with, the Levandowski Agreements.  In addressing this issue, "the correct analysis is whether Plaintiffs would have a *claim* independent of the existence of the … [a]greement."  *Kramer*, 705 F.3d at 1131 (quotation marks omitted).  Thus, "equitable estoppel applies 'when the signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory.'"  *Id.* (quoting *Goldman v. KMPG LLP*, 173 Cal. App. 4th 209, 222 (2009)).  If a party need not rely on the agreement, then "the

9

basis for equitable estoppel—relying on an agreement for one purpose while disavowing the arbitration clause of the agreement—is completely absent." *Goldman*, 173 Cal. App. 4th at 230.

Here, there is no question Waymo need not rely on the Levandowski Agreements to prove its case because Waymo has expressly agreed *not* to do so. Order at 4. There is no legal or logical basis to say that Waymo is relying on (or that its claims are founded and intertwined with) the Levandowski Agreements when its claims are being brought entirely independent of anything in those agreements. *Id.*

Uber argues (Mot. 10) that the "complaint expressly relies on the confidentiality obligations in the Levandowski Agreements in an effort to establish that it has taken reasonable steps to protect the secrecy of the alleged trade secrets." However, Uber ignores the district court's explanation that "Waymo need not *rely* on the terms of its written agreements merely because it makes *reference* to such agreements." Order at 4. Indeed, the Amended Complaint does not even reference the Levandowski Agreements specifically, instead only generally mentioning the use of confidentiality agreements as support for the fact that Waymo protects its trade secrets. Dkt. 23 ¶¶ 72, 82. Moreover, the district court found that "Waymo has alleged and provided a sworn record of how it takes

reasonable measures to maintain secrecy," and thus it need not rely on the Levandowski Agreements to prove this point.  Order at 4.

In any event, any speculation that Waymo might rely on the Levandowski Agreements is baseless because Waymo has foresworn such reliance.  *See id.*  Uber argues (Mot. 10-11) that this cannot overcome a statement in the complaint referencing the agreements.  But Uber provides no rationale for this argument.  The fundamental purpose of the equitable estoppel doctrine is to "preclude[] a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes."  *Kramer*, 705 F.3d at 1128 (quotation marks omitted).  Since Waymo is not claiming any such benefits, there is no equitable basis to impose on Waymo the arbitration provisions of the Levandowski Agreements in favor of a nonsignatory.  Uber relies generically (Mot. 10) on cases saying that courts should look to the complaint, but none of those cases suggests that courts can *only* look at the complaint and therefore should ignore the fact that the party need not rely on the agreements and by its own commitment will not do so.[3]

Uber also contends (Mot. 11-13) that the Levandowski Agreements necessarily control whether there was a misappropriation of trade secrets here.

---

[3]  As to Uber's suggestion (Mot. 11) that the commitment is not strong enough because Waymo could reference the agreements if Uber opens the door by citing them in the first instance, this argument is baseless.  Waymo would not "rely" on the agreements simply by rebutting *Uber*'s attempted reliance on them.

However, there is no legal basis for this argument. Waymo seeks to enforce statutory rights under California's Uniform Trade Secrets Act and the federal Defend Trade Secrets Act. As the district court explained and Uber does not dispute, misappropriation of trade secrets under these statutes can exist based on a breach of the duty of loyalty *regardless* of whether the employee *also* breached a contractual duty. Order at 5; *see also, e.g.*, *Blackbird Techs., Inc. v. Joshi*, 2015 WL 5818067, at *4 (N.D. Cal. Oct. 6, 2015) (under California law, an employee owes a duty of loyalty to his employer, and "may not use the employer's property or confidential information for the employee's own purposes or those of a third party") (quotation marks omitted). Courts routinely hold that equitable estoppel does not apply where, as here, the plaintiff's claims against nonsignatories are founded in statutory or common law duties independent of contractual duties. *See, e.g.*, *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1215-16 (9th Cir. 2016) (equitable estoppel does not apply because "the claims against [the signatory] arise under the MCRA and not out of obligations imposed by the 2014 Agreement"); *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013) (similar).

Uber cites no precedent suggesting (let alone holding) that when an employment agreement exists, a misappropriation claim cannot be based on the duty of loyalty. A written employment agreement does not supersede an employee's duty of loyalty, as evidenced by cases allowing an employer to bring

12

claims for *both* breach of contract and breach of the duty of loyalty. *See, e.g.*, *E.D.C. Techs., Inc. v. Seidel*, 216 F. Supp. 3d 1012, 1014-17 (N.D. Cal. 2016). More generally, "the same wrongful act may constitute both a breach of contract and an invasion of an interest protected by the law of torts." *N. Am. Chem. Co. v. Superior Court*, 59 Cal. App. 4th 764, 774 (1997); *see also Pac. Select Fund v. Bank of N.Y. Mellon*, 2010 WL 11468787, at *5 (C.D. Cal. Sept. 20, 2010) (under California law, "a breach of fiduciary duty claim cannot be contracted away") (quotation marks and brackets omitted).

Uber cites two cases (Mot. 12-13), both of which are inapposite. The first held only that a contractual indemnity claim superseded a common law indemnity claim. *Facility Constr. Mgmt. Inc. v. Ahrens Concrete Floors, Inc.*, 2010 WL 1265184, at *4 (N.D. Ga. Mar. 24, 2010). The second concerned a misappropriation claim between two separate companies, and thus (unlike the employer-employee relationship between Levandowski and Waymo here) there was no duty of loyalty that existed in addition to the contractual duty. *See Uptown Drug Co. v. CVS Caremark Corp.*, 962 F. Supp. 2d 1172, 1185 (N.D. Cal. 2013). In any event, even assuming a contract *could* supersede the duty of loyalty, there is nothing in the Levandowski Agreements to suggest they actually did so here. While the agreements impose certain limitations on disclosure of confidential

13

information, nowhere do they suggest that the limitations are exclusive or that they purport to eradicate other duties that exist at common law.

Finally, Uber argues (Mot. 14) that the district court failed to examine the "intimately founded in and intertwined with" standard. But the district court expressly found that Waymo's claims "are not dependent on or inextricably bound up with those agreements." Order at 7. Moreover, the Ninth Circuit has made clear that this is simply another way of describing the required reliance. *See Kramer*, 705 F.3d at 1129 ("To determine whether the plaintiffs' claims relied on the written agreement, the *Goldman* court looked to whether the claims that the nonsignatory sought to arbitrate were intimately founded in and intertwined with the underlying contract obligations.") (quotation marks omitted). And the Ninth Circuit has consistently held that the "intimately founded in and intertwined with" test is not satisfied where, as here, the claims can be proven without regard to the agreement. *See, e.g.*, *id.* at 1132; *Murphy*, 724 F.3d at 1231 (holding claims were not intertwined where "Plaintiffs' claims do not depend on the Agreement's terms," but rather "[t]he UCL and CLRA allow Plaintiffs to sue Best Buy for misleading consumers regardless of whether or not they signed largely unrelated contracts with DirecTV").[4]

---

[4]  Uber cites (Mot. 12-13) *Murphy* as "finding equitable estoppel on 'intertwined' basis alone," but *Murphy rejected* equitable estoppel and made no distinction between reliance and intertwined. 724 F.3d at 1230-31.

In any event, Uber's only argument (Mot. 14-15) for why the misappropriation claims are "intimately founded in and intertwined with" the Levandowski Agreements is that Levandowski's alleged conduct breached his contractual duties. However, it is irrelevant that *in addition* to breaches of the duty of loyalty sufficient for misappropriation claims, Levandowski *also* breached the contracts. This shows, at most, that Waymo *could have* used the Levandowski Agreements to support its claims, not that Waymo *must* do so. And where, as here, a plaintiff need not and does not use the agreements to support its claim, then there is no basis for equitable estoppel. *See supra* pp. 9-11.

**2.** As to the second prong of the equitable estoppel test, Uber argues (Mot. 17) that the district court erroneously conflated this test with reliance, but Uber ignores the district court's clear finding that "[w]ith respect to the second *Goldman* prong, Waymo's allegations of interdependent conduct by Levandowski and defendants are not founded in or intimately connected with the obligations of the 2009 and 2012 agreements." Order at 4. Moreover, Uber has no support for its assertion (Mot. 17) that the "intimately connected" test is satisfied whenever the contractual "obligations were designed to prevent what Waymo now alleges happened." Instead, the Ninth Circuit has held that the second prong requires that "claims the plaintiff asserts against the nonsignatory are dependent on or inextricably bound up with the contractual obligations of the agreement." *Murphy*,

724 F.3d at 1232 (quotation marks omitted).  The district court correctly adopted this test and found it not satisfied here, since Waymo is not using the contractual obligations as the basis for its claims.  Order at 5-6.[5]

Furthermore, the second prong applies only "where a signatory to an arbitration agreement attempts to evade arbitration by suing nonsignatory defendants for claims that are based on the same facts and are inherently inseparable from *arbitrable claims against signatory defendants*."  *Murphy*, 724 F.3d at 1231 (emphasis added, internal quotation marks omitted).  Here, there are no "signatory defendants"—Waymo has not brought any trade secret claims against Levandowski—so this form of equitable estoppel cannot apply as a matter of law.  *See Amergence Supply Chain Mgmt. Inc. v. Changhong (Hong Kong) Trading Ltd.*, 2016 WL 8234652, at *6 (C.D. Cal. Apr. 21, 2016) ("Because Plaintiff brings no claims against signatories to the NDA, the second circumstance does not apply.").

## B.    Uber Fails To Show Irreparable Harm

Uber has the burden to "show that an irreparable injury is the more probable or likely outcome."  *Leiva-Perez*, 640 F.3d at 968.  The district court correctly found, and certainly did not abuse its discretion in finding, that Uber failed to show

---

[5]    The district court also readily distinguished all of the cases Uber cites where courts have held the equitable estoppel requirement satisfied.  Order at 6-9.  Uber makes no effort to respond to the district court's reasoning.

irreparable harm from the absence of a stay here.  6/7 Tr. 41.  Given the parties' agreement to an expedited briefing schedule in this Court, Uber does not dispute that this appeal can be decided before the October 2 trial date.  Thus, the *only* supposed harm Uber identifies (Mot. 19-20) is having to engage in certain pretrial proceedings.  However, this supposed harm does not suffice for a stay.

*First*, there is no harm from the pretrial proceedings because, as the district court found, any discovery taken in this litigation "will be of benefit to the arbitrators if that day ever comes."  6/7 Tr. at 40:3-5.  Uber ignores this point. Moreover, to the extent Uber relies (Mot. 19) on the supposed harm of summary judgment briefing, Uber ignores that the district court would consider summary judgment motions through a precis system and may not allow summary judgment motions at all.  6/7 Tr. at 40:16-41:7.  Thus, as Uber acknowledges, the scenario Uber envisions is no more than a "possibility" (Mot. 19), which is insufficient to warrant a stay.  *See Leiva-Perez*, 640 F.3d at 965, 968.

*Second*, it is well established that litigation costs do not constitute irreparable harm.  *See FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.") (quotation marks omitted); *see also, e.g.*, *Morse v. Servicemaster Glob. Holdings, Inc.*, 2013 WL 123610, at *3 (N.D. Cal. Jan. 8, 2013).  Indeed, if litigation costs did suffice, then the irreparable harm requirement

17

would be satisfied in virtually every case seeking a stay of district court proceedings pending appeal. To be sure, Uber cites (Mot. 18-19) some district court cases relying on litigation expenses for irreparable injury. But those decisions are inconsistent with Supreme Court precedent: litigation expenses are not irreparable injury, and whether they arise in a case where one party seeks arbitration does not change that fact. In any event, those cases generally concern the burden of *trial*, not (as here) pretrial proceedings that would have to be undertaken for an arbitration anyway. *See, e.g.*, *Antonelli v. Finish Line, Inc.*, 2012 WL 2499930, at *2 (N.D. Cal. June 27, 2012) (basing irreparable injury on the "onerous burdens imposed on Defendant in preparing for dispositive motions and a subsequent jury trial"); *Zaborowski v. MHN Gov't Servs., Inc.*, 2013 WL 1832638, at *2 (N.D. Cal. May 1, 2013) (same for "the expense of trial").[6]

*Third*, Uber's supposed need for a stay pending appeal is belied by Uber's own repeated delays. Waymo filed its complaint on February 23, but Uber waited over a month to move to compel arbitration. Dkt. 125. Even after the district court denied Uber's motion on May 11, Uber waited a week to file its Notice of Appeal (*see* Dkt. 464), and then another four weeks (until June 16) to file its opening brief in this appeal. As the district court found, Uber has been "dragging its feet," and

---

[6] Uber also cites *Alascom v. ITT N. Elec. Co.*, 727 F.2d 1419 (9th Cir. 1989), but that case concerned whether the district court decision was appealable, not whether it should be stayed pending appeal. In any event, *Alascom* remarked on "the expense and delay of a trial," not pretrial proceedings. *Id.* at 1422.

the stay request is nothing more than an effort "to delay that October 2nd trial" date.  6/7 Tr. 29-30; *see also id.* 26 (the district court telling Uber that Waymo "ha[s] a right to get to go trial on October 2nd, and you're doing everything you can to throw road blocks in the way").  Thus, the supposed urgency that could support a need for immediate relief—so immediate that it cannot wait for full briefing to be complete in only a month—is illusory.  *See, e.g.*, *Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) ("The district court did not abuse its discretion by finding this delay undercut [the] claim of irreparable harm.").

### C.    A Stay Would Substantially Injure Waymo

The district court correctly found, and certainly did not abuse its discretion in finding, that "a stay would definitely injure Waymo."  6/7 Tr. 41:20-23.  As the district court explained, "the equities here favor giving Waymo a trial as early as fair and possible because they have made a strong showing that they have been grievously wronged by a former employee who was having meetings with Uber on the sly ahead of time."  *Id.* 37:23-38:2.  Waymo "made a compelling case to get to trial and get as much equitable relief as they can get to undo the damage that [Uber's] employee did to them."  *Id.* 26:1-6.

Uber argues (Mot. 20) that the technology at issue will not be commercialized before the resolution of Waymo's claims, but there is no way to know when the claims will be resolved if a stay is issued.  A stay would inevitably

19

require the trial date to be pushed back and, as the district court explained, it will not be easy to reschedule.  6/7 Tr. 26, 37.  Regardless, the district court correctly found that Uber's use of Waymo's trade secrets would substantially harm Waymo, in an unquantifiable way, even prior to commercialization.  Dkt. 433 at 18-19. Uber does not contest this finding or the district court's reasoning supporting it.

Uber also argues (Mot. 20-21) that the preliminary injunction and expedited discovery not covered by the proposed stay would obviate any harm to Waymo. But that preliminary injunction does not provide the full relief Waymo requested to ensure protection of its trade secrets, in large part because the record was not yet fully developed.  Instead, "troves of likely probative evidence have been concealed from Waymo" in this case "under relentless assertions of privilege that shroud dealings between Levandowski and defendants in secrecy."  Dkt. 433 at 18-19. The expedited discovery does not cover these supposedly privileged documents— 3,500 documents from Uber and an unknown number from Levandowski (who has asserted his Fifth Amendment privilege as to almost everything).  Thus, the stay here would prevent Waymo from accessing many of the most critical documents in this case.[7]  When the district court raised this very concern, Uber's *only* response was that "we're simply trying to avoid prejudice of a trial and to expedite our

---

[7]    The proposed stay would also bar Waymo from seeking other critical, non-expedited discovery, and the timing matters given the risk of lost evidence, as supported by a recent whistleblower lawsuit accusing Uber of routinely deleting information that was "subject to litigation hold."  *See* Dkt. 511 at 12 n.7.

appeal." 6/7 Tr. 36. Yet Uber seeks in this Court a stay far greater than one to avoid trial, making its answer to the district court completely unresponsive (if not misleading).

### D.    The Public Interest Does Not Support A Stay

Finally, the public interest also does not support Uber's stay request. The district court held that this factor was neutral, but noted that a stay would substantially disrupt the court's trial schedule, which could be considered a harm to the public interest. 6/7 Tr. 37:11-15, 41:24-42:4. Uber ignores this point.

In addition, as the district court found in its preliminary injunction order, "the public has an interest in vindicating intellectual property rights, and in prohibiting unfair competition." Dkt. 433 at 20. The requested stay pending appeal, by delaying the trial and the potential for permanent injunctive relief, would substantially impair those interests. That is especially true here, given that the district court has already found strong evidence of violations of Waymo's rights.

Uber relies solely on the argument that public policy favors arbitration. However, "[t]he strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009). Thus, when the question is "whether a particular *party* is bound by the arbitration agreement" then "the

liberal federal policy regarding the scope of arbitrable issues is inapposite." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006); *see also* Order at 3.

## CONCLUSION

This Court should deny Uber's motion for a stay pending appeal.

Dated:  June 19, 2017                    Respectfully submitted,

                                         /s/ Charles K. Verhoeven
                                         Charles K. Verhoeven
                                         David A. Perlson
                                         QUINN EMANUEL URQUHART
                                         & SULLIVAN, LLP
                                         50 California Street, 22nd Floor
                                         San Francisco, CA 94111-4788
                                         (415) 875-6600

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This opposition contains 5,199 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.  This opposition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Federal Circuit Rule 28.1 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

This opposition has been prepared in a proportionally spaced typeface using MS Word in 14 point Times New Roman font.

Dated:  June 19, 2017                    Respectfully submitted,

<u>/s/ Charles K. Verhoeven</u>
Charles K. Verhoeven
David A. Perlson
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111-4788
(415) 875-6600

## <u>CERTIFICATE OF INTEREST</u>

Pursuant to Federal Circuit Rule 47.4, counsel of record for Plaintiff-Appellee Waymo LLC certifies as follows:

1. The full name of every party represented by our firm is:  Waymo LLC.

2. The names of the real party in interest represented by our firm are:  Not applicable.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the parties represented by our firm are:  Waymo LLC's managing member is Waymo Holding Inc., accordingly, Waymo Holding Inc. has more than 10% ownership of Waymo LLC; Waymo Holding Inc. is a wholly owned subsidiary of Google Inc., accordingly, Google Inc. has more than 10% ownership of Waymo Holding Inc.; and Google Inc. is a wholly owned subsidiary of Alphabet Inc., accordingly, Alphabet Inc. has more than 10% ownership of Google Inc.

4. The names of all law firms and the partners or associates that appeared for the party represented by us in the trial court, or are expected to appear in this Court and who are not already listed on the docket for the current case:

Charles Kramer Verhoeven
David Andrew Perlson
Melissa J. Baily
John M. Neukom
Jordan Ross Jaffe
Kevin Alexander Smith
Andrew Michael Holmes
James Dubois Judah
Lindsay Cooper
Jeffrey William Nardinelli
John William McCauley, IV
Felipe Corredor
Grant Nicholas Margeson
Patrick Thomas Schmidt
Andrea Pallios Roberts
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor

24

San Francisco, CA 94111
(415) 875-6600

Joshua Lee Sohn
Jared Weston Newton
QUINN EMANUEL URQUHART & SULLIVAN, LLP
777 6th Street NW, 11th Floor
Washington, DC 20001
(202) 538-8000

David M. Cooper
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010
(212) 849-7000

Leo Patrick Cunningham
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA 94304-1050
(650) 320-4573

Dated:  June 19, 2017          /s/ Charles K. Verhoeven

                              Charles K. Verhoeven
                              David A. Perlson
                              QUINN EMANUEL URQUHART
                              & SULLIVAN, LLP
                              50 California Street, 22nd Floor
                              San Francisco, CA 94111-4788
                              (415) 875-6600

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I filed the foregoing Opposition to Motion To Stay District Court Proceedings Pending Appeal with the Clerk of the United States Court of Appeals for the Federal Circuit via the CM/ECF system and served a copy on counsel of record, this 19th day of June, 2017, by the CM/ECF system and by electronic mail to the parties on the service list below.

Miles Ehrlich
Ismail Ramsey
Amy Craig
RAMSEY & EHRLICH LLP
803 Hearst Avenue
Berkeley, CA 94710
Tel: (510) 548-3600
miles@ramsey-ehrlich.com
izzy@ramsey-ehrlich.com
amy@ramsey-ehrlich.com

*Counsel for Intervenor-Appellant*
*Anthony Levandowski*

Arturo J. Gonzalez
Matthew Ian Kreeger
Daniel Pierre Muino
Eric Akira Tate
Esther Kim Chang
Michael A. Jacobs
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Phone: (415) 268-7000
agonzalez@mofo.com
mkreeger@mofo.com
dmuino@mofo.com
etate@mofo.com
echang@mofo.com
mjacobs@mofo.com

*Attorneys for Uber Technologies, Inc.,*
*and Ottomotto LLC*

Hamish Hume
Jessica E Phillips
Kyle Smith
BOIES SCHILLER AND FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
Phone: (202) 237−2727
hhume@bsfllp.com
jphillips@bsfllp.com
ksmith@bsfllp.com

*Attorneys for Uber Technologies, Inc.,*
*and Ottomotto LLC*

Karen Leah Dunn
Martha Lea Goodman
BOIES, SCHILLER AND FLEXNER LLP
5301 Wisconsin Avenue, NW
Washington, DC 20015
Phone: (202) 237−2727
kdunn@bsfllp.com
mgoodman@bsfllp.com

*Attorneys for Uber Technologies, Inc.,*
*and Ottomotto LLC*

Meredith Richardson Dearborn
BOIES SCHILLER FLEXNER LLP
435 Tasso Street, Suite 205
Palo Alto, CA 94301
Phone: (650) 445−6400
mdearborn@bsfllp.com

*Attorneys for Uber Technologies, Inc.,*
*and Ottomotto LLC*

Michael Darron Jay
BOIES SCHILLER & FLEXNER LLP
401 Wilshire Boulevard, Suite 850
Santa Monica, CA 90401

Rudolph Kim
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA 94304
Phone: (650) 813−5869
rudykim@mofo.com

*Attorneys for Uber Technologies, Inc.,*
*and Ottomotto LLC*

Michelle Ching Youn Yang
MORRISON FOERSTER LLP
2000 Pennsylvania Avenue, NW
Washington, DC 20006
Phone: (202) 887−1537
myang@mofo.com

*Attorneys for Uber Technologies, Inc.,*
*and Ottomotto LLC*

Wendy Joy Ray
MORRISON & FOERSTER LLP
707 Wilshire Boulevard Suite 6000
Los Angeles, CA 90017
Phone: (213) 892-5200
wray@mofo.com

*Attorneys for Uber Technologies, Inc.,*
*and Ottomotto LLC*

David Shane Brun
Brett Michael Schuman
Hayes Phillips Hyde
Rachel Melissa Walsh

27

Phone: (310) 752−2400
mjay@bsfllp.com

*Attorneys for Uber Technologies, Inc.,*
*and Ottomotto LLC*

GOODWIN PROCTER LLP
Three Embarcadero Center
24th Floor
San Francisco, CA 94111
sbrun@goodwinlaw.com
bschuman@goodwinlaw.com
hhyde@goodwinlaw.com
RWalsh@goodwinlaw.com

*Attorneys for Otto Trucking LLC*

John Lee Cooper
Farella Braun + Martel LLP
235 Montgomery Street, Suite 1700
San Francisco, CA 94104
jcooper@fbm.com
*Special Master*

Indra Neel Chatterjee
GOODWIN PROCTER LLP
135 Commonwealth Drive
Menlo Park, CA 94025
NChatterjee@goodwinlaw.com

*Attorneys for Otto Trucking LLC*

Dated:  June 19, 2017

/s/ Charles K. Verhoeven
Charles K. Verhoeven
David A. Perlson
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111-4788
(415) 875-6600

# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

*CERTIFIED COPY*

Before The Honorable William H. Alsup, Judge

| | | |
|---|---|---|
| WAYMO LLC, | ) | **Motions Hearing** |
| | ) | **Case Management Conference** |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. C 17-00939 WHA |
| | ) | |
| UBER TECHNOLOGIES, INC.; | ) | Pages 1 - 95 |
| OTTOMOTTO LLC; OTTO | ) | |
| TRUCKING LLC, | ) | |
| | ) | San Francisco, California |
| Defendants. | ) | |
| _____ | ) | Wednesday, June 7, 2017 |

### REPORTER'S TRANSCRIPT OF PROCEEDINGS

**APPEARANCES:**

```
Special Master:          Farella Braun & Martel
                         235 Montgomery Street, 17th Floor
                         San Francisco, California  94014
                    BY:  JOHN L. COOPER, ATTORNEY AT LAW


For Plaintiff:           Quinn, Emanuel, Urquhart & Oliver
                         50 California Street, 22nd Floor
                         San Francisco, California  94111
                    BY:  MELISSA I. BAILEY,
                         LINDSAY COOPER,
                         JORDAN R. JAFFE,
                         JAMES D. JUDAH,
                         JOHN W. McCAULEY IV,
                         DAVID A. PERLSON, ATTORNEYS AT LAW

               (APPEARANCES CONTINUED NEXT PAGE)

Reported By:       Raynee H. Mercado, CSR No. 8258
```

    Proceedings reported by electronic/mechanical stenography;
transcript produced by computer-aided transcription.

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR (510) 451-7530*

# A P P E A R A N C E S (CONT'D.)

For Defendant Uber        Boies Schiller Flexner LLP
Technologies, Inc.:       1401 New York Avenue NW
                          Washington, D.C.  20005
                     BY:  KAREN L. DUNN,
                          HAMISH HUME,
                          MEREDITH DEARBORN, ATTORNEYS AT LAW


                          Morrison & Foerster
                          707 Wilshire Boulevard
                          Los Angeles, California  90017-3543
                     BY:  SYLVIA RIVERA, ATTORNEY AT LAW


                          Morrison & Foerster
                          425 Market Street
                          San Francisco, California  94105-2482
                     BY:  ESTHER KIM CHANG,
                          ERIC AKIRA TATE, ATTORNEYS AT LAW


For Defendants            Goodwin Procter LLP
Ottomotto LLC and         Three Embarcadero Center
Otto Trucking LLC:        San Francisco, California  94111
                     BY:  BRETT SCHUMAN, ATTORNEY AT LAW



                          --o0o--

```
1  Wednesday, June 7, 2017                           8:00 a.m.
2                      P R O C E E D I N G S
3          THE CLERK:  Calling 17-939, and it's Waymo LLC versus
4  Uber Technologies Inc., et al., on for a motion hearing and
5  also for initial case management conference.
6      Counsel could you please state your appearances for the
7  record.
8          MR. PERLSON:  Good morning, Your Honor.  David
9  Perlson for plaintiff Waymo, here with Melissa Bailey, Jordan
10 Jaffe, John McNally (phonetic), James Judah, and Lindsay
11 Cooper.
12         THE COURT:  Okay.  Welcome to all of you.
13         MS. DUNN:  Good morning, Your Honor.  On behalf of
14 the Uber defendants from Boies Schiller, Karen Dunn, Hamish
15 Hume, and Meredith Dearborn.
16         THE COURT:  Welcome.
17         MS. RIVERA:  Good morning, Your Honor.  Also on
18 behalf of the Uber defendants, Sylvia Rivera with Morrison &
19 Foerster, along with Esther Chang and Eric Tate.
20         THE COURT:  Well, good morning.
21         THE SPECIAL MASTER:  John Cooper, Special Master.
22         THE COURT:  Welcome to you, too.
23         MR. SCHUMAN:  Morning, Your Honor.  Brett Schuman of
24 behalf of defendant Otto Trucking.
25         THE COURT:  Okay.  We're here for several motions.
```

 1   because it maintains the confidential business information on

 2   its secure servers.  The point is all of it ties back to the

 3   confidential nature of the information.

 4       And by the -- And additionally, the -- the court --

 5   another court -- and appreciate that different courts -- no

 6   court's bound by the other in the Northern District, but in

 7   *Sunpower*, the -- another judge in this court evaluated the

 8   exact same issue and disavowed and didn't -- and disregarded

 9   *Kremen*.

10       So there's no way that they can, based on what -- how they

11   pled their complaint thus, far how they've argued and what

12   they've said in their opposition, there is no way that they

13   can amend the deficiency in their complaint for the -- to save

14   their unfair competition claim.

15           **THE COURT:**  Thank you.

16       All right.  That will be under submission.

17       What else is on the calendar for 8:00 o'clock?  I am

18   confused on that.

19           **MR. PERLSON:**  Your Honor, I think that for 8:00

20   o'clock, it's the -- initial joint or the initial case

21   management conference.

22           **THE COURT:**  Can we go ahead and argue the motion for

23   stay?  Is everyone here on that one that wants to be here?

24           **MR. PERLSON:**  We can argue that now from our

25   perspective.

1          **THE COURT:**  Did Miles Ehrlich file a brief on that

2     issue?

3          **MR. PERLSON:**  I don't think so.

4          **THE COURT:**  All right.  So we're going to go ahead

5     and hear that motion.  Go ahead.

6          **MR. HUME:**  Good morning, Your Honor.  Hamish Hume

7     from Boies Schiller for Uber.

8          Your Honor, our motion for stay is based on, as you know,

9     the Section 4 of the Federal Arbitration Act, which allows an

10    immediate appeal of a decision denying a motion to compel

11    arbitration.  The Ninth Circuit in the -- I'm not sure how to

12    pronounce it, but the *Nken* case has laid out the factors, very

13    similar to normal stay factors or preliminary injunction-type

14    factors.

15         The two main inquiries are, is this a serious question; is

16    there some likelihood of success or at least a substantial

17    legal question presented by our appeal.

18         And secondly, will we be irreparably harmed if we don't

19    get a stay?  And how does that balance with whether there will

20    be any harm visited upon Waymo if we did get a stay.

21         As we laid out in our papers, Your Honor, obviously the

22    court has made its decision on our motion to compel.  We

23    respect that.  We do think it's appealable.  We do think there

24    are very significant legal arguments on our side to be

25    presented to the Federal Circuit.

1    I would briefly summarize them as follows:  The Ninth

2    Circuit articulation of circumstances in which it is

3    appropriate to compel arbitration based on equitable estoppel

4    under California state law laid out the following

5    circumstances.  First, where the plaintiff must rely on the

6    underlying contract with the signatory to advance claims

7    against the non-signatory.

8        In open court in response to the court's question, Waymo

9    said they won't rely but then waffled on that and then said

10   unless Uber opens the door.

11       They also invoked the confidentiality provisions in the

12   employment agreements in their complaint and chose to enter

13   into a contract with Mr. Levandowski that would govern his

14   confidentiality obligations.  And the heart of this case is

15   their claim that he breached those obligations by taking trade

16   secrets from them.

17       So the heart of this case is about Mr. Levandowski's

18   employment relationship with Waymo, whether he violated the

19   terms of that relationship, which they chose to put into a

20   contract, which they chose to have an arbitration clause in

21   it.

22       So the first question is, is that first circumstance

23   identified in the *Kramer* case and in the California courts

24   limited to or -- or avoided -- is it avoided if the plaintiff

25   chooses to litigate the case as if that contract did not exist

1    and to pretend that it's invisible even though they chose to

2    create and chose to put an arb clause in there.  We think that

3    is a substantial legal question.

4        The second question presented on the appeal involves the

5    second part of that first circumstance in the *Kramer* case,

6    which says that California courts have compelled arbitration

7    based on equitable estoppel and motions to compel brought by

8    non-signatories like Uber where the underlying claims by the

9    plaintiff are intimately founded in and inextricably

10   intertwined --

11           **THE COURT:**  With the contract.

12           **MR. HUME:**  -- with the contract.

13               (Simultaneous colloquy.)

14           **THE COURT:**  -- they're not here, though.  The -- The

15   basic problem that you have is that the other side, Waymo can

16   litigate this case without trying to have it both ways.  In

17   other words, it's not trying to rely on that contract with

18   Levandowski to win this case.  It's going after Uber directly

19   for stealing trade secrets.  That's what they're trying to

20   prove, that you and Levandowski got -- got in bed together to

21   steal trade secrets.

22       And they don't need that contract if -- to prove that, so

23   they're not trying to have it both ways.  They -- They would

24   be trying to have it both ways if they were suing on that

25   contract or inextricably relying on that contract and then

1    trying to get away from the arbitration clause.  I agree with

2    you on that, but that's not our situation.

3       So I -- I think -- Now, if they try to -- if they do at

4    trial try to do that, they may have a big problem with me

5    based on what they've said.  But I have -- I see plenty of

6    ways to try this case without ever mentioning that contract.

7       You might bring it up, but they don't to have bring it up.

8          MR. HUME:  And I think that's the question, Your

9    Honor.  Obviously, we don't agree that we got in bed with --

10   in effort to steal trade secrets --

11         THE COURT:  I'm not saying you did.  I'm saying

12   that's what they're alleging.

13         MR. HUME:  But that is what they're saying.

14         THE COURT:  But there's some proof to that effect.

15         MR. HUME:  We're not here to ask the court to

16   reconsider its decision but simply to try to persuade the

17   court that there is a substantial legal question, and here's

18   why.

19      That circumstance identified in the *Kramer* case for

20   compelling arbitration at the insistence of a non-signatory

21   like Uber based on equitable estoppel, that circumstance

22   cannot be limited to claims alleging a breach of contract or

23   suing the counter-signatory.

24      We know that from four cases -- or at least the -- the

25   *Metalclad* case, the *Turtle Ridge* case, the *Rodriguez* case, and

1    to some extent, from the *Torbit* case.  And we think California

2    law is clear in support of our motion that -- that it does not

3    require them to rely on the contract explicitly for their

4    claims to be inextricably intertwined with that contractual

5    relationship.

6          **THE COURT:**  They don't even have to have that

7    contract to sue.

8          Listen, there's -- the evidence is pretty strong that

9    Levandowski, while he's working at Waymo, sneaks over to Uber,

10   has many, many conversations with Uber about how much money

11   he's going to get, beaucoup bucks, and what is it that he's

12   supposed to do to get all that money?  A jury could easily

13   conclude that he was supposed to steal some trade secrets.

14   And he did.

15         So if you think you're going to be able to skate by all

16   those inferences by saying, well, they got to prove what was

17   in our mind, that's not the way mental processes work at the

18   jury-trial level.  They don't to have rely on any kind of a

19   contract.  They got plain old all American old-fashioned theft

20   of trade secrets that don't even have to have -- they don't

21   have to have that contract in any way.

22         You -- If you want to bring it up, you're just trying it

23   up to try to escape a jury trial.

24         **MR. HUME:**  No.

25         **THE COURT:**  Yes, you are.  You don't want to go in

1   front of jury right over there because the inferences all work

2   against you, and you're invoking the attorney-client privilege

3   on 3500 documents -- a huge number; I've never seen such a

4   huge number -- which a jury could reasonably conclude is a

5   coverup.

6       **MR. HUME:**  Your Honor, I think we're going to address

7   all of those issues, and those issues could also be presented

8   to an arbitration panel --

9       **THE COURT:**  Oh, yeah, well, they could be.  Okay.

10  Yes, they could be.

11      But nevertheless, they got a right to a jury trial, as I

12  see it, and -- and you don't -- you can't make them arbitrate

13  this case.

14      **MR. HUME:**  Well, that's the question.  And in the

15  other cases -- I just want to be clear, in the other

16  California cases we've invoked, the non-signatory was being

17  sued for claims that didn't mention the contract at all.  In

18  all of those cases, *Metalclad*, *Turtle Ridge*, and *Rodriguez* --

19      **THE COURT:**  I extinguish all of those in my prior

20  order.  I'm not going to go back to that.  I'm not going to go

21  back and re-litigate what we've already decided in this case.

22      We're talking now about a stay.  I'm going to give you one

23  more minute to make the rest of your points.  I understand

24  your arguments.

25      What else do you want to say?

1    **MR. HUME:**  The stay is not prejudicial to Waymo,

2    and --

3         **THE COURT:**  Yes, it is.  Yes, it is.  They have a

4    right -- They have made a compelling case to get to trial and

5    get as much equitable relief as they can get to undo the

6    damage that your employee did to them.

7         **MR. HUME:**  We --

8         **THE COURT:**  That is an equitable compelling right.

9    Arbitration would be years in the future.  And they have a

10   right to get to go trial on October 2nd, and you're doing

11   everything you can to throw road blocks in the way.  That's

12   the -- that's the equity of it.

13        **MR. HUME:**  If the case goes to trial on October 2nd

14   and the Federal Circuit agrees with us that it should have

15   been arbitrated, we'll be prejudiced.

16        **THE COURT:**  Well, they can -- you can -- I will ask

17   that they -- they don't even to expedite.  They could get this

18   decided by October 2nd.  Why can't the Federal Circuit decide

19   this, say, in September?  Then if they say I've made a

20   mistake, I'll salute and say, God bless you, you're going to

21   go to arbitration.

22        **MR. HUME:**  Okay.

23        **THE COURT:**  And that would be fine.

24                  (Simultaneous colloquy.)

25        **THE COURT:**  This is June.

1   **MR. HUME:** It might be worth noting, Your Honor, we

2   asked them to expedite it. Waymo's trying block that

3   expedition. We want the decision quickly.

4   **THE COURT:** Well, I will ask -- Is that true? Let's

5   hear from Waymo on this.

6   **MR. PERLSON:** Morning, Your Honor.

7   **THE COURT:** Is that true, that you're trying to block

8   expedition on this?

9   **MR. PERLSON:** Well, no. What we -- what we submitted

10  is that the proposal that they submitted was unfair, and I'll

11  give you some reasons why. First of all --

12  **THE COURT:** Proposal to me or to the Federal Circuit?

13  **MR. PERLSON:** They proposed an expedited discovery

14  schedule to us that we felt was -- was unfair and also --

15  **THE COURT:** What do you need discovery for in the

16  Federal Circuit? I don't understand --

17  **MR. PERLSON:** Not discovery. I'm sorry. An

18  expedited briefing schedule, and -- that we felt was unfair.

19  And, first of all, just as a precursor for that, what

20  they've done even to that point has been a point of delay.

21  Your order issued on May 11th and they've sought no relief

22  from the Federal Circuit to expedite anything.

23  And now they say that they can't do that because it's not

24  docketed, but that's not how it's even worked in this case.

25  Like, Mr. Levandowski, when he brought -- when you told him

1   that he had to bring a stay, he brought the stay motion.  The

2   Federal Circuit --

3           THE COURT:  Well, hasn't the note -- Wait, wait.

4   There's been a notice of appeal.  I saw that myself.

5           MR. PERLSON:  One week after your order.

6           THE COURT:  All right.  And then once that's done,

7   they can docket the appeal, right?

8           MR. PERLSON:  Right.  And they could -- they could

9   have filed a motion weeks ago, and they didn't.  And they wade

10  until yesterday to file their motion to expedite the appeal.

11  And then even when they did that, Your Honor, incredibly,

12  their proposal says that they get ten days -- not from when --

13  not from now to file their brief, but from when the Federal

14  Circuit rules on their expedited schedule so they want ten

15  more days even after they rule to fill it.

16      So they're doing everything they can, while they want to

17  come here and say that they're trying to push this thing

18  along -- this is after they waited a month to file this --

19  their motion to compel in the first place, then they're --

20  they wait a month to even file a motion to expedite the

21  schedule in the Federal Circuit.

22          THE COURT:  All right.  Look --

23          MR. HUME:  Your Honor, may I just make one point

24  clear?

25          THE COURT:  Go ahead.

1          **MR. HUME:**  It wasn't -- We can't file a motion to

2      expedite until the case was docketed.  And for some reason the

3      case was not docketed for a couple of weeks after --

4          **THE COURT:**  Why not?  You could have docketed --

5          **MR. HUME:**  We called the clerk --

6      Your Honor, we called this court's clerk, we called the

7      Federal Circuit's clerk multiple times, and we found out there

8      had been an oversight.  It wasn't docketed.  We wanted it

9      docketed.

10          **THE COURT:**  An oversight by our staff or the

11      federal --

12          **MR. HUME:**  I believe that is correct, Your Honor.

13          **THE COURT:**  You mean, my deputy clerk, Dawn Toland,

14      are you saying that she made a mistake?

15          **MR. HUME:**  I don't know who, Your Honor.  It's not

16      about that.

17          **THE COURT:**  I don't -- I don't like -- I don't think

18      you should be accusing our staff of making a -- if we made a

19      mistake, you should have brought it to our attention on day

20      one.  We fix things right away if we've done it, so you sat on

21      your hands in my opinion.

22          **MR. HUME:**  That's not correct.

23          **THE COURT:**  Then it's not our fault.  Don't blame us.

24          **MR. HUME:**  We --

25          **THE COURT:**  I believe you been dragging your feet.

1    That's what I believe.  You want to do everything you can to

2    delay that October 2nd trial.

3             **MR. HUME:**  That's not correct, Your Honor.

4             **THE COURT:**  All right.  Have a seat.

5        All right.  Give me your summary of your argument.

6             **MR. PERLSON:**  Okay, Your Honor.

7        When -- When it -- When defendants brought this motion

8    initially, what they told you was that there was a substantial

9    question because there were issues of first impression.  And

10   they laid out a number of things that were really just all

11   rehash of their overall argument that because we mention

12   the -- the employment agreement or that the employment

13   agreement exists that it can't -- that there can't be reliance

14   and there can't be -- you know, that the facts aren't

15   intertwined.  And so basically it's a rehash of the arguments

16   that we just heard begin this morning in some respects.

17       And then when we pointed out that they themselves had

18   asserted that there was this significant body of case law that

19   supported their position and so it didn't make any sense for

20   them to say that these were issues of first impression, they

21   come back and they say that the issue on substantial question

22   is whether their appeal is frivolous or not.  They don't offer

23   any support for that either.  That's not what the law is.

24       And basically --

25            **THE COURT:**  Can I ask you a question?

 1          MR. PERLSON:  Yeah.

 2          THE COURT:  All right.  Tell me your plan for getting

 3    to trial by October 2nd.

 4          MR. PERLSON:  Okay.

 5      Well --

 6          THE COURT:  Keeping in mind the 3500 documents that

 7    has been concealed under privilege that haven't -- even you

 8    haven't gotten through the briefing on that before Judge

 9    Corley.  Keeping in mind that you haven't --

10      Do we even have a fully done privilege log from

11    Levandowski?

12          MR. PERLSON:  Well, what happened was that on -- on

13    Friday, they served a -- in camera a revised log that Judge

14    Corley had ordered them to do.  They -- They did that in

15    camera so we --

16          THE COURT:  All right.  So it's in camera.  You don't

17    know.  All right.  You don't know.

18          MR. PERLSON:  Well, I don't know if it's sufficient

19    or not because I haven't seen it.

20          THE COURT:  Where does it stand on the 3500 documents

21    that claim privilege by Uber?

22          MR. PERLSON:  Well, Judge Corley on Monday denied --

23    I mean, granted our motion to compel the due diligence report.

24    And we think that all of those -- and I've never heard

25    anything to the contrary that all 3500 of those documents or

1  nearly all of them will flow from that because they claim the

2  common interest as to all of them.  So --

3      And I don't know whether they're going to appeal it or

4  not, but it seems like there would be no basis for them to do

5  that --

6          **THE COURT:**  She only ruled on the due diligence

7  report.

8          **MR. PERLSON:**  Well, the -- but those other 3500 pages

9  all reference the due diligence.  And she's saying -- and the

10 court has held that there's no privilege in relation to that

11 due diligence effort at all.

12     And so the common interest that is extinguished by virtue

13 of the due diligence report is going to eliminate the due

14 diligence -- the common interest that they're claiming on

15 those 3500 documents.

16         **THE COURT:**  Maybe -- I'm not buying into that, or

17 it's not -- I've never heard that argument before.  I thought

18 they had independent grounds apart from the due diligence for

19 invoking the privilege.  At least that's what they were

20 claiming.

21         **MR. PERLSON:**  Well, I don't think that's right, Your

22 Honor.  And, in fact, whenever we've sort of broached the

23 issue of, well, you have all these other problems with your

24 privilege log, for example, they -- hardly having the

25 bone-crushing detail that you had suggested earlier -- you

1   know, hundreds of these entries are nearly identical, an issue

2   that we've raised.  And they said, well, why are we raising

3   these issues now when the issue of the common interest is

4   before Judge Corley?  And let's not deal with these issues.

5       And so I think it would be a complete about face for them

6   to come in and say that these 3500 documents are not -- are

7   now -- that they don't need to disclose them because they're

8   claiming the same common interest that the judge found not to

9   exist.

10          **THE COURT:**  Well, I am not commenting on that one way

11   or the other.  I want to come back to my original question,

12   and that is, are you going to be ready to go trial on October

13   2nd?

14          **MR. PERLSON:**  Yes, Your Honor.  And we have proposed

15   a schedule that the parties have agreed to to get to that

16   point.

17          **THE COURT:**  And tell me why you would be prejudiced

18   if we were to derail that.

19          **MR. PERLSON:**  Well, there's -- well, in several

20   respects.  First one is the one that you mentioned that we are

21   entitled to equitable relief here and that our -- you know, we

22   think we're going to get a permanent injunction in this case

23   regarding the trade secrets, some of which Your Honor had

24   already found that we've made a -- a strong showing on and

25   raised serious questions as to, and we want to get that as

1   soon as possible.

2   You know, they're -- even today -- even with the

3   preliminary injunction order, we still -- it hasn't been

4   enforced.  We still don't have the documents back.  We

5   still -- and, in fact, they haven't even asked Stroz

6   Friedberg, their consultant who did the due diligence report,

7   to return those documents.

8   And, you know, there are several, you know, intellectual

9   property rights that we're seeking to be vindicated, and

10  absent permanent relief, we're going to be prejudiced.

11  As Your Honor found just even in granting the preliminary

12  injunction, this is a nascent industry.  Things are moving

13  very quickly.  And so we can't wait longer than we already

14  have to get vindication of the rights.  And they've provided

15  no valid basis for us to have to wait.

16  **THE COURT:**  Well, what if you -- you have propounded

17  hundreds of document requests.  You have a program of

18  discovery in mind.  And what happens if you get to, say,

19  middle of August, which is only two months away, and you

20  decide you're getting stonewalled and you can't be ready to go

21  to trial?  Then what are you going to do?

22  **MR. PERLSON:**  Well, Your Honor, it's our goal not to

23  get in this position.  And we're going to bring any issues

24  that come up swiftly.  And with Mr. Cooper's assistance, I'm

25  hopeful that we can avoid --

1       **THE COURT:**  Is Mr. Cooper helping or not?

2       **MR. PERLSON:**  Yes, he's helping, Your Honor.  And

3   he's helping us getting issues before --

4       **THE COURT:**  I want -- He's getting $1100 an hour.

5   That's a phenomenal amount of money.  And he should be solving

6   these problems.

7       Mr. Cooper, Special Master, I want you to solve these

8   problems and get these documents -- if they deserve to be seen

9   and not -- in other words, if the privilege is no good, we got

10  to get to the bottom of it.  We have a trial on October 2nd,

11  and we can't wait till September to get those documents.

12      **THE SPECIAL MASTER:**  We're working on that, Your

13  Honor.

14      **THE COURT:**  All right.  "Working on it" is the

15  present participle tense.  That's like the "check is in the

16  mail," so I urge you to spend as much time as you humanly can

17  at $1100 an hour getting this done.

18      **THE SPECIAL MASTER:**  Thank you, Your Honor.

19      **THE COURT:**  All right.

20      **MR. PERLSON:**  Your Honor, we already have some calls

21  scheduled today, so he's spending quite a bit of time already

22  on these issues and trying to help us work through them.

23      **THE COURT:**  All right.  Any rebuttal?

24      **MR. HUME:**  Your Honor, I would just emphasize that

25  the expedited -- the PI order you entered, the expedited

1   discovery you granted, we don't seek to stay any of that.

2   We're really not trying to prevent Waymo --

3        **THE COURT:**  Are you seeking to stay the issue of the

4   privileged documents?  In other words, the 3500 documents that

5   are being withheld on grounds of privilege that would show

6   what Uber knew and when they knew it, are you trying to keep

7   that from going forward?

8        **MR. HUME:**  I -- I actually don't think we need to do

9   that, no.  I think we're simply trying to avoid prejudice of a

10  trial and to expedite our appeal.

11       **THE COURT:**  All right.  I'm going to give you a

12  little bit of help on that part.  Thank you.  Have a seat.

13       All right.  Here's the answer.

14       The test is -- the test on these circumstances is that

15  four-part test.  I won't repeat it all, but whether this --

16  I'll summarize it whether the stay applicant has made a strong

17  showing that he is likely to succeed on the merits.  Two,

18  whether the applicant will be irreparably injured absent a

19  stay.  Three, whether issuance of the stay will substantially

20  injure the other parties interest in the proceeding.  And,

21  four, where the public interest lies.  And this is within the

22  court's discretion.

23       Now, I've already ruled on the merits of the arbitration

24  point.  I'm going to rule on the -- from the bench on this

25  one, on the stay part.  And I want to make a few observations.

1    Before the preliminary injunction motion was decided, I

2    made the observation that if it were to go against Uber, that

3    Uber would want a prompt trial date to get out from under a

4    preliminary injunction.  And conversely, if it went the other

5    way, the plaintiff would want the prompt trial date.  And so I

6    asked you to meet and confer and agree on a date ahead of time

7    so that -- while you were both still uncertain, and you both

8    agreed on October 2nd.  So we have a -- a trial date that is

9    one that both sides have agreed to, a trial date of October

10   2nd.

11    And I want you to know, I have -- I have readjusted my own

12   calendar in a way that would prejudice the court if we were to

13   shift that around.  That's maybe part of the public interest

14   factor here.  But nevertheless, I want you to know it's not

15   just an idle thing.

16    However, once the preliminary injunction came out -- and

17   in one sense that Uber came out ahead because Uber was afraid

18   the court was going to shut down their entire program and the

19   court did not do that.  Now Uber wants to wiggle out from that

20   October 2nd agreement.  In other words, Uber wants to go back

21   on its word and wants a stay of the case.  So that's one point

22   to keep in mind.

23    A second point to keep in mind is that the equities here

24   favor giving Waymo a trial as early as fair and possible

25   because they have made a strong showing that they have been

1   grievously wronged by a former employee who was having

2   meetings with Uber on the sly and ahead of time.

3       And whether Uber knew it or not, maybe they did, they were

4   talking big bucks, millions of dollars, to -- and it -- a jury

5   could reasonably conclude from these facts that Uber knew good

6   and well he was going to steal trade secrets and bring them.

7       Now, maybe Uber can prove that they didn't, but

8   nevertheless, this is -- this is not your ordinary BS

9   plaintiff case.  This is a strong case.  I don't mean that all

10  plaintiffs' cases are BS.  I misspoke on that.  What I mean is

11  this is not blather.  This is serious.

12      This is a serious proposition, and Waymo is entitled to

13  have its day in court to get the relief that it -- it --

14  equity would say that it deserves if it can prove its case to

15  a jury.

16      All right.  Next, I do believe that one practical point

17  that is raised by -- by Uber is that conceivably the judge is

18  wrong, meaning me.  And conceivably the Federal Circuit could

19  go the other way.  I don't -- I wouldn't think so, but I --

20  nevertheless it's always possible.  But hereby urge the

21  Federal Circuit to give as expedited consideration to this

22  appeal as possible.  I think there's plenty of time to get it

23  decided by -- before October 2nd.

24      And -- And that we, can in the meantime, go ahead

25  preparing this case as if it's going to go to trial on October

1    2nd.  And then if the Federal Circuit intervenes and says no,

2    you got to arbitrate the case, then we will salute, send it to

3    arbitration and that will be the end of it, except that --

4    perhaps for the provisional relief part.

5        Now, I do think that both sides -- in fact, I'm going to

6    order both lawyers for both sides to communicate to the

7    Federal Circuit the respectful request by the district judge

8    that -- that they be mindful of the trial date in October and

9    please try to give -- set a briefing schedule that will allow

10   it to be decided by then and to please not let Waymo or Uber

11   delay or obstruct that schedule.

12       In my judgment, it's already been adequately briefed and

13   you don't need a lot of time to brief this before the Federal

14   Circuit.  It can be done on an expedited basis if the Federal

15   Circuit wanted it to be.

16       Here's another point.  Even if this case were to go to

17   arbitration later on, all of this discovery that we're doing

18   would be of benefit to the arbitrators.  All of this discovery

19   in trying to wade through these privilege issues would be of

20   benefit to the arbitrators later on.

21       The only way you could possibly say that it would not be

22   if you were to indulge in the cynical view that arbitrators

23   would cut discovery off and not allow any discovery.  I don't

24   think that would happen here.  I think they would allow

25   discovery.  But that would be too cynical of you in my -- that

1    somehow arbitration is an unfair process and that by running

2    off into arbitration, you can escape discovery.

3        That, I don't accept.  And I -- I believe that the

4    discovery that we're doing in this case will be of benefit to

5    the arbitrators if that day ever comes.

6        In that connection, we have massive privilege logs that

7    have been submitted by Uber and for that matter Levandowski

8    and it's going to take some time, but it ought to be done as

9    quickly as humanly possible to wade through that and find out

10   what Uber knew and when they knew it.  That's one of the key

11   issues in the case.

12       And it could turn out that Uber is totally innocent and --

13   in terms of what they knew and when they knew it, but there's

14   3500 documents that's going to shed some light on that if

15   they're ever -- if they ever see the light of day.

16       Now, another thing that we can possibly do that I -- that

17   has concerned me a bit is that with respect to summary

18   judgment motions, which conceivably an arbitrator might

19   decide -- we will -- we will use précis system that you're all

20   familiar with.  And it could be that we will just not allow

21   summary judgment motions in order to -- to avoid making

22   rulings on the ultimate merits that might affect what in -- in

23   other words, an arbitrator might decide it a different way.

24       So it's conceivable that on a summary judgment, the court

25   would say no, we can put that one off for a while or we'll

1   do -- that can be brought up on Rule 50 later in order not

2   to -- not to prejudice possible range of action by the

3   arbitrator later.

4        On the other hand, I -- there could be motions for summary

5   judgment where the equities require that we go ahead and

6   decide it, so I'll just say I'll consider that on a

7   case-by-case basis.

8        So going back to the factors whether the stay applicant

9   has made a strong showing that he is likely to succeed on the

10  merits, the answer is no.  And that's got to be more than just

11  not frivolous.  It's got to be strong showing on the likely to

12  succeed.  I'd say no, that hasn't been done.

13       Whether the applicant will be irreparably injured absent a

14  stay, I would -- I would say that we're not there yet.  If we

15  were to get to the point where we actually have the trial and

16  the Federal Circuit hasn't decided the stay, then that would

17  be a problem and we can consider it at the final pretrial

18  conference.  But up until that point, there won't be any

19  irreparable injury.

20       Three, whether the issuance of the stay will substantially

21  injure the other parties in the proceeding.  Well, a stay

22  would definitely injure Waymo, and Waymo has a -- has made a

23  showing that deserves an answer.

24       Four, where the public interest lies.  I'm not sure which

25  way this one cuts, so I don't think the public interest favors

1   putting this case in arbitration, but I -- at the same time,

2   I'm not sure that it does -- that the public has an interest

3   in a private dispute, so I don't know.  That one I think

4   doesn't cut much either way.

5       Anyway, the circumstances don't warrant a stay.  And for

6   the reasons I've stated and -- the stay motion is going to be

7   denied as of right now.

8       All right.  So let's go to case management.

9       Okay?

10      I'm not going to do a written order beyond what I've just

11  said on the record.

12      Okay.  Case management.  I handed out -- Did we hand it

13  out?  Oh, we did not.  Okay.  I'm very sorry.  I thought we'd

14  handed it out before.  We're going to do the following:  I'm

15  going to hand you a proposed case management order and then

16  I'll take a short break, and then we'll come back in ten

17  minutes and we can comment on it.

18      I think it will just be better if you have the draft order

19  in front of you.  All right?

20      Okay.  Thank you.

21                  (Pause in the proceedings.)

22      **THE COURT:**  Please get a hold of those lawyers that

23  are missing and ask them if they can get here right away so we

24  don't to have wait till 10:00 o'clock.  All right?

25      Thank you.

## CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter. I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further that I am not financially nor otherwise interested in the outcome of the action.

_____

Raynee H. Mercado, CSR, RMR, CRR, FCRR, CCRR

Wednesday, June 7, 2017